Filed 2/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>   Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>   Respondent;<br><br>SOLUS INDUSTRIAL INNOVATIONS, LLC, et al.,<br><br>   Real Parties in Interest. | G047707<br><br>(Super. Ct. No. 30-2012-00581868)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Kim Garlin Dunning, Judge. Petition Denied.

Tony Rackauckas, District Attorney, and Kelly A. Roosevelt, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Jones Day, Brian A. Sun and Frederick D. Friedman, for Real Parties in Interest.

Amy D. Martin and Kathryn J. Woods for the Department of Industrial Relations Division of Occupational Safety and Health as Amicus Curiae on behalf of the People.

*          *          *

In this case we are called on to interpret the effect of Labor Code section 6315, subdivision (g), which specifies that in cases involving serious injury to five or more employees in the workplace, or the death of an employee, and where a formal investigation by the Division of Occupational Safety and Health (the Division) was mandated, the results of that investigation "shall be referred in a timely manner . . . to the appropriate prosecuting authority having jurisdiction for appropriate action."

Petitioner, the Orange County District Attorney, contends that when such a case is referred to him, he has standing to pursue claims for both criminal and civil penalties against the responsible parties. In this case, he sued respondents Solus Industrial Innovations, Emerson Power Transmission Corp. and Emerson Electric Co. (collectively Solus), alleging various civil violations, including two causes of action based Labor Code sections 6428 and 6429. Solus contends those two causes of action are improper, because while the district attorney has plenary power to pursue *criminal penalties* where appropriate, he has no power to pursue *civil penalties* unless specifically authorized by statute to do so. These two Labor Code statutes include no such authorization. Based on that contention, Solus demurred to the two causes of action in the trial court, arguing the district attorney had no standing to enforce the underlying statutes.

The trial court agreed with Solus and consequently sustained its demurrer to the two causes of action based on the Labor Code without leave to amend. However,

2

the court also certified this issue as presenting a controlling issue of law suitable for early appellate review under Code of Civil Procedure section 166.1. The district attorney then filed a petition for writ of mandate with this court, asking us to review the trial court's ruling. After we summarily denied the petition, the Supreme Court granted review and transferred the case back to us with directions to issue an order to show cause.

We issued the order to show cause and now conclude the trial court's ruling was correct on the merits. The statutory scheme for enforcement of workplace safety standards reflects that the Division is the governmental agency responsible for civil enforcement of the Labor Code provisions, and that mandatory referral of serious cases to prosecutors is primarily intended to facilitate criminal prosecution where appropriate. We consequently deny the petition.

FACTS

As is required when we review the propriety of the trial court's ruling on a demurrer, "'we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.'" (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.)

Solus makes plastics at an Orange County manufacturing facility. In 2007, Solus installed an electric water heater intended for *residential use* at the facility. In March 2009, that water heater exploded, killing two workers instantly in what the district attorney refers to as an "untimely and horrific death."

After the incident, the Division opened an investigation and determined the explosion had been caused by a failed safety valve and the lack of "any other suitable safety feature on the heater" due to "manipulation and misuse." Based on the Division's investigation, it charged Solus with five "'[s]erious'" violations of title 8 of the California

3

Code of Regulations in an administrative proceeding, including violations of: "(1) section 467(a) for failure to provide a proper safety valve on the heater; (2) section 3328(a) for permitting the unsafe operation of the water heater; (3) section 3328(b) for improperly maintaining the water heater; (4) section 3328(f) for failing to use good engineering practices when selecting and using the unfit residential water heater in the extrusion operations; and (5) section 3328(h) for permitting unqualified and untrained personnel to operate and maintain the water heater." The Division also cited Solus with one "'[w]illful'" violation of the same regulation, based on its "willful failure to maintain the residential water heater in a safe operating condition."

Because the incident involved the death of two employees, and there was evidence that a violation of law had occurred, the Division's Bureau of Investigation (BOI) forwarded the results of its internal investigation to the district attorney as required by Labor Code section 6315, subdivision (g). In March 2012, the district attorney filed criminal charges against two individuals, including Solus's plant manager and its maintenance supervisor, for felony counts of violating Labor Code section 6425, subdivision (a). (See *People v. Faulkinbury,* (Super. Ct. Orange County, 2012, No. 12CF0698).) No party challenges the district attorney's standing to bring these or other appropriate criminal prosecutions.

In July 2012, the district attorney also filed the instant civil action against Solus. The complaint contains four causes of action, all based on the same worker health and safety standards placed at issue in the administrative proceedings.

The first cause of action alleges that Solus's violations of the safety standards set forth in title 8 of the California Code of Regulations also qualified as a separate "serious violation" of occupational safety or health standards under Labor Code section 6428, for each day the water heater was in operation, and for each employee subjected to the hazardous condition. It seeks recovery of "civil penalties of 'up to

4

twenty-five thousand dollars ($25,000) for each violation' from November 29, 2007 to March 19, 2009."

The second cause of action alleges that Solus's violations of the safety standards set forth in title 8 of the California Code of Regulations also constituted a separate "willful violation" of occupational safety or health standards under Labor Code section 6429 for each day the water heater was in operation, and for each employee subjected to the hazardous condition as a result of the violation. The district attorney seeks to recover "civil penalties of 'not more than seventy thousand dollars ($70,000) for each violation, but in no case less than five thousand dollars ($5,000) for each willful violation from November 29, 2007 to March 19, 2009."

The third and fourth causes of action allege that these same Labor Code violations also constitute unfair business practices under California's Unfair Competition Law (UCL) (see Bus. & Prof. Code, § 17200 et seq.). However, it is only the first and second causes of action which are at issue in this writ proceeding.

Solus demurred to the first and second causes of action, contending the district attorney had no statutory authority to pursue civil actions for Cal/OSHA violations. The trial court agreed, and sustained the demurrer to these causes of action, without leave to amend.

The trial court subsequently granted a request to certify the standing issue as appropriate for early appellate review under Code of Civil Procedure section 166.1, finding "[t]he issue of [the district attorney's] standing to bring the First and Second Causes of Action in the Complaint . . . presents a controlling question of law as to which there are substantial grounds for difference of opinion and that appellate resolution of this issue may materially advance the conclusion of the litigation."

The district attorney filed a petition for writ of mandate with this court, which we summarily denied. After our denial, the Supreme Court granted review and

5

transferred the case back to us with directions to issue an order to show cause. On May 10, 2013, we issued the order to show cause.

DISCUSSION

*1. The Statutory Scheme for Workplace Safety Violations*

Labor Code sections 6428 and 6429, the civil penalty provisions underlying the district attorney's two challenged causes of action, are part of the California Occupational Safety and Health Act of 1973 (Lab. Code, § 6300 et seq; the Act), which was "enacted for the purpose of assuring safe and healthful working conditions for all California working men and women by authorizing the enforcement of effective standards, assisting and encouraging employers to maintain safe and healthful working conditions, and by providing for research, information, education, training, and enforcement in the field of occupational safety and health." (Lab. Code, § 6300.)

The Act specifically gives the Division "the power, jurisdiction, and supervision over every employment and place of employment in this state, which is necessary to adequately enforce and administer all laws and lawful standards and orders, or special orders requiring such employment and place of employment to be safe, and requiring the protection of the life, safety, and health of every employee in such employment or place of employment." (Lab. Code, § 6307.)

The Act also requires the Division to "investigate the causes of any employment accident that is fatal to one or more employees or that results in a serious injury or illness, or a serious exposure, unless it determines that an investigation is unnecessary . . . [and to] establish guidelines for determining the circumstances under which an investigation of these accidents and exposures is unnecessary." (Lab. Code, § 6313, subd. (a).)

6

Labor Code section 6315, subdivision (b), specifies that within the Division is the BOI, which "is responsible for directing accident investigations involving violations . . . in which there is a serious injury to five or more employees, death, or request for prosecution by a division representative. The [BOI] shall review inspection reports involving a serious violation where there have been serious injuries to one to four employees or a serious exposure, and may investigate those cases in which the [BOI] finds criminal violations may have occurred." Moreover, "[i]n any case where the [BOI] is required to conduct an investigation, and in which there is a serious injury or death, the results of the investigation shall be referred in a timely manner by the bureau to the appropriate prosecuting authority having jurisdiction for appropriate action, unless the [BOI] determines that there is legally insufficient evidence of a violation of the law." (Lab. Code, § 6315, subd. (g).) Moreover, "[u]pon the request of a county district attorney, the department may develop a protocol for the referral of cases that may involve criminal conduct to the appropriate prosecuting authority in lieu of or in cooperation with an investigation by the bureau." (Lab. Code, § 6315, subd. (i).)

Labor Code section 6425, subdivision (a), expressly provides for *criminal prosecution* of "[a]ny employer and any employee having direction, management, control, or custody of any employment, place of employment, or of any other employee, who willfully violates any occupational safety or health standard, order, or special order, or Section 25910 of the Health and Safety Code, and that violation caused death to any employee, or caused permanent or prolonged impairment of the body of any employee . . . ."

Labor Code section 6317 requires the Division to issue a citation to an employer in any case where it "believes that an employer has violated Section 25910 of the Health and Safety Code or any standard, rule, order, or regulation established pursuant to Chapter 6 (commencing with Section 140) of Division 1 of the Labor Code,

7

or any standard, rule, order, or regulation established pursuant to this part . . . ." (Lab. Code, § 6317.) A citation must be issued within six months of the occurrence of a violation. (*Ibid*; *Vial v. California Occupational Saf. & Health Appeals Bd.* (1977) 75 Cal.App.3d 997, 1005.) Labor Code section 6317 also specifically empowers the Division to "impose *a civil penalty* against an employer as specified in Chapter 4 (commencing with section 6423) of this part." (Italics added.) Labor Code sections 6428 and 6429, the penalty provisions at issue herein, are within that chapter.

If the Division issues a citation or a notice of civil penalty, it is required, within a reasonable time, to notify the employer by certified mail of the citation, and of the employer's right to contest the citation. The employer may then appeal the citation, or the "notice of civil penalty" to the "appeals board." (Lab. Code, § 6319, subd. (b).) The final enforcement decision reached by the Division as a result of this administrative process "may be reviewed by the Supreme Court and the courts of appeal as may be provided by law." (Lab. Code, § 6308.)

2. *The District Attorney's Limited Standing to Bring Civil Actions*

Solus's challenge to the district attorney's standing to maintain these Labor Code causes of action is based on *Safer v. Superior Court* (1975) 15 Cal.3d 230 (*Safer)*. In *Safer*, our Supreme Court concluded that a district attorney's power to bring civil actions is limited to situations where such action is expressly authorized. As the court explained, "the Legislature has manifested its concern that the district attorney exercise the power of his office *only in such civil litigation as that lawmaking body has, after careful consideration, found essential*. An examination of the types of civil litigation in which the Legislature has countenanced the district attorney's participation reveals both the specificity and the narrow perimeters of these authorizations." (*Id*. at p. 236, italics added.) As Solus points out, *Safer* has been cited with approval by the Supreme Court in

8

subsequent cases; most recently in *People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 753, footnote 12, where there court reiterated that "a district attorney has no authority to prosecute civil actions absent *specific* legislative authorization." (Italics added.)

The district attorney attempts to minimize the significance of *Safer*, arguing it must be construed narrowly so as to avoid infringing his statutory authority to act as "public prosecutor" to "initiate and conduct on behalf of the people all prosecutions for *public offenses*." (Gov. Code, § 26500, italics added; section 26500.) In the district attorney's view, section 26500 implicitly confers on him the authority to pursue all claims seeking penalties, whether civil or criminal, and places the onus on the Legislature to specify the situations where he lacks authority to pursue civil penalties: "When the Legislature seeks to restrict the District Attorney's ability to pursue civil penalties for public offenses, Section 26500 confirms that the law must expressly so state; otherwise, the District Attorney has authority to act as the public prosecutor for all public offenses. *If the Legislature intended to grant [the Division] exclusive authority to seek civil penalties and limit prosecutors to taking criminal actions, . . . the Legislature could easily have said so,* but it did not." (Italics added.)

There are two flaws in that argument. First, section 26500 does not define "public offenses," and the district attorney offers no persuasive authority for his implicit assertion the term would naturally encompass violations of *civil* penalty statutes as well as criminal ones. We would conclude the opposite, based on Government Code section 26501. While neither statute actually defines the term "public offenses," the latter strongly implies the term *could not* encompass civil wrongs, because it *requires* a district attorney to "institute proceedings before magistrates *for the arrest of persons charged with or reasonably suspected of public offenses* when he has information that such offenses have been committed." (Gov. Code, § 26501, italics added.) The "arrest" of

9

persons suspected of "public offenses" could not be mandated if that term were interpreted to include mere *civil* statutory violations.

At oral argument the district attorney relied, for the first time, on Penal Code section 15 to support his expansive definition of the term "public offenses." He argued Penal Code section 15 defined a "crime or public offense" as including any "act committed or omitted in violation of a law forbidding or commanding it," and which is punishable by death, imprisonment, *fine*, removal from office or disqualification to hold or enjoy an office. But even if we were to assume (as the district attorney apparently does) that a "fine" under the Penal Code is the same thing as a civil penalty, the contention still falls apart when we consider the *entire* language of Penal Code section 15. The statute states that the violations of law which qualify as crimes or public offenses are those to which the specified penalties are annexed "upon *conviction*." There are no "convictions" under civil law. Moreover, Penal Code section 16 – the very next statute – states that "[c]rimes and public offenses include: [¶] 1. Felonies; [¶] 2. Misdemeanors; and [¶] 3. Infractions." Civil wrongs are not mentioned.

The second problem with the district attorney's argument is that it is contrary to *Safer*, which makes clear that the Legislature's traditional practice has been to affirmatively specify the circumstances in which a district attorney *can* pursue claims in the civil arena, not the circumstances in which he *cannot*. (*Safer, supra,* 15 Cal.3d at p. 236.) Indeed, in the area of employee rights specifically, Labor Code section 218 provides an excellent example of this practice, by expressly stating "[n]othing in this article shall limit the authority of the district attorney of any county or prosecuting attorney of any city to prosecute actions, either civil or criminal, for violations of this article or to enforce the provisions thereof independently and without specific direction of the division."

10

Business and Professions Code section 17204 provides another example, stating, "Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or a district attorney or by a county counsel authorized by agreement with the district attorney . . . ." And Business and Professions Code section 17206, subdivision (a) states, "Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, [or] by any district attorney . . . ."

These statutes, which explicitly *confer* standing on district attorneys to pursue the specified civil penalties, reinforce the conclusion that section 26500 is not intended to give district attorneys plenary authority to pursue any and all such penalties. As pointed out in *Safer*, we infer the district attorney's lack of authority to proceed where no authority is granted from "the Legislature's clear demonstration that it knows how to grant him such power when it wishes to do so." (*Safer, supra,* 15 Cal.3d. at pp. 237-238.) Based on this analysis, we conclude the only plenary authority conferred upon district attorneys is to pursue actions in the criminal arena.

Finally, *Board of Supervisors v. Simpson* (1951) 36 Cal.2d 671 (*Simpson*), which the district attorney relies upon heavily in his reply brief, is entirely consistent with our conclusion. *Simpson* involved a dispute about whether a county board of supervisors could compel the district attorney to bring a civil action to abate a public nuisance in the name of the people, without violating the separation of powers doctrine. The Supreme Court concluded it could, citing Government Code section 26528, which *expressly* provides for a district attorney to bring such a suit, and authorizes a board of supervisors to compel it: "The district attorney may, and when directed by the board of supervisors shall, *bring a civil action in the name of the people of the State of California to abate a*

11

*public nuisance in his county.*" (Gov. Code, § 26528, italics added.) Given that *Simpson* involves a district attorney who initiated a civil action which was *expressly authorized by statute*, it provides no support for the district attorney's argument here.

Consequently, in the absence of explicit statutory authorization conferred on district attorneys to pursue claims for civil penalties under Labor Code sections 6428 and 6429, we have no choice but to conclude they lack that standing.

*3. No Statute Confers Standing on the District Attorney to Bring These Causes of Action*

Neither Labor Code sections 6428 and 6429, nor any other statute making specific reference to those statutes, expressly confers standing on the district attorney to bring an action for recovery of the civil penalties provided for in those statutes. And in light of our Supreme Court's determination that "a district attorney has no authority to prosecute civil actions absent *specific* legislative authorization" (*People v. Superior Court (Humberto S.), supra,* 43 Cal.4th at p. 753, italics added), we could not conclude that standing could be established by implication.

But even if we believed that standing could be established by implication, neither the district attorney nor the Division acting as amicus curiae offers any persuasive argument that it should be found in this case. Both the district attorney and the Division point to Labor Code section 6315, subdivision (g) as the source of implied standing, arguing its requirement that cases be referred to prosecutor's for "appropriate action" confers upon prosecutors the discretion to file whatever actions, civil or criminal, that *they deem* appropriate.

Indeed, the district attorney suggests the trial court's interpretation of Labor Code section 6315 amounted to striking the word "appropriate" from the phrase "appropriate action" and substituting the word "criminal" in its place. We disagree. The trial court's interpretation merely reflects its acknowledgment that *other laws*, as

12

discussed in *Safer* and its progeny, restrict the scope of actions which a district attorney may *appropriately* pursue in the civil realm. And to the extent the district attorney is otherwise *statutorily authorized* to pursue appropriate civil claims against an employer who caused a workplace injury or death, those claims would be among the actions available to him. But Labor Code section 6315, subdivision (g) does not itself *create* plenary standing.

The district attorney also suggests the trial court was misguided in suggesting that a rule permitting district attorneys to pursue these civil penalties would allow them to engage in "cherry pick[ing]," and throw the Cal/OSHA enforcement scheme into disarray. The district attorney claims "cherry pick[ing]" is not a concern because he can only act in cases referred by the BOI for prosecution. But that contention ignores the fact the BOI is statutorily *obligated* to refer all cases which involve serious injury to multiple employees, or a death, unless it determines there is insufficient evidence of any violation of law. The prosecutor then has discretion to take appropriate action, or to not take action, in response to that mandatory referral. If that discretion were deemed to include the right to pursue *the same* civil penalties which by statute are within the province of the Division (Lab. Code, § 6317), as well as criminal actions, the prosecutor could presumably usurp the Division's *own discretion* to determine, through its administrative process, whether the imposition of civil penalties under either Labor Code section 6428 or section 6429 would be appropriate.

Of course, the district attorney appears to believe this would not be a problem, because in his view, the Division is essentially incapable of enforcing these Labor Code civil penalties in serious cases. According to the district attorney, it is the not the Division's responsibility to "investigat[e] the most serious workplace violations"; instead, the Division is expected only to conduct an "initial investigation and file[] citations within the short six month window set forth for administrative action." By

13

contrast, he claims it is the responsibility of the BOI, and *not the Division*, to "investigat[e] the most serious workplace violations," which he contends "takes much longer." Thus, in the view of the district attorney, it is unlikely the Division would ever be able to pursue the significant civil penalties he has undertaken to enforce in this case, and consequently "there [could never] be any enhanced or greater civil penalties assessed against the most egregious offenders."

Again, there are several flaws in this argument. First, and most significant, the assertion that the Division cannot be expected to enforce these most serious civil penalty provisions is simply inconsistent with statutory scheme. Labor Code section 6317 gives the Division *explicit* authority to do just that. Second, contrary to the district attorney's apparent belief, the Division and the BOI are not separate entities with independent investigative responsibilities. The BOI is part of the Division. (Lab. Code, § 6315, subd. (a) ["There is within the division a Bureau of Investigations"].) If the Division has to make an enforcement decision in a serious case, we have no reason to doubt that the BOI would cooperate in that effort to its fullest extent. And finally, there is simply no support for the district attorney's contention that the BOI itself would be unable to sufficiently investigate a serious incident within the six-month time frame for issuance of citations by the Division. To the contrary, the district attorney's own complaint in this case alleges that the citations issued by the Division against Solus in the underlying administrative action were based upon the results of a completed investigation and encompassed five "[s]erious" and one "[w]illful" violation. And when the district attorney took action after receiving the mandatory referral from the BOI, he alleged the right to recover civil penalties against Solus based upon *the exact same* violations. There is simply no basis to infer that the district attorney benefitted from the additional passage of time or any enhanced investigation. The allegations are unchanged.

14

Finally, in support of its amicus brief, the Division points out that prosecutors have successfully pursued civil penalties without apparent objection in other cases, and asked us to take judicial notice of the outcomes in those cases.  We declined to take judicial notice because the mere fact that some trial courts have allowed such claims to proceed without objection does nothing to establish those claims were pursued appropriately.  "'It is axiomatic that cases are not authority for propositions not considered.'"  (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.)

DISPOSITION

The petition is denied.  Solus is to recover costs of this proceeding.

**CERTIFIED FOR PUBLICATION**


RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


THOMPSON, J.


15