Filed 10/4/17; Certified for Publication 10/25/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAN LUO,<br><br>    Defendant and Appellant. | H042668<br>(Santa Clara County<br>Super. Ct. No. 214054) |

After an unsupported excavation at a construction site caved in and killed a worker, a jury convicted defendant Dan Luo of involuntary manslaughter (Pen. Code, § 192, subd. (b)) and three counts of willfully violating an occupational safety or health order causing death (Lab. Code, § 6425, subd. (a)). Defendant contends there is insufficient evidence to support his conviction, and that the trial court committed instructional error and improperly limited cross-examination of certain witnesses. He also contends he was not given adequate notice of the charges, that the prosecution failed to elect a particular criminal act, and that the statute prohibiting the willful violation of occupational safety orders is unconstitutionally vague. For the reasons explained, we find no error and will affirm the judgment.

## I.  BACKGROUND

Defendant Dan Luo worked for Richard Liu, a real estate agent in Fremont.[1]  In addition to being a real estate agent, Liu was a licensed general contractor who had completed a number of residential construction projects.  Defendant was neither a licensed realtor nor a contractor but he acted as Liu's assistant, tending to administrative matters and showing properties to potential buyers.

 In April 2010, Liu represented the seller of a parcel of bare land located on a hillside in a gated residential community in Milpitas.  Liu received an inquiry from someone who wanted to buy the property to build a home, and directed defendant to meet the potential buyer for a showing.  Liu told the buyer that he offered "one-stop shopping" for new home construction; that is, the buyer could purchase the land through him and also retain his services as a general contractor to design and build a home.

 The buyer purchased the land for $620,000 and later entered into a residential construction contract with Liu's corporation for $731,800.  The buyer also agreed to a design contract providing that Liu's company would retain architectural and engineering professionals to design the home, at a cost of $133,500.  The final plans called for a multi-level single story residence built into the hillside.  The design required significant excavation to dig out areas for walls and the foundation.

Liu hired a licensed contractor with whom he had worked on past projects to do the foundation and framing work for the house.  The contractor and his crew began the process of digging out the hillside according to the plans.  They excavated what was to be a hallway by digging a deep, rectangular cut into the hill.  At the far end of the excavation was a 12-foot high dirt wall with an overhanging ledge of soil at the top.  The dirt wall was not supported and there was no sloping or benching (steps cut into the soil) in the

---

[1] Richard Liu was convicted of involuntary manslaughter as a codefendant in this case.  He appealed from the judgment, but prior to briefing we ordered his appeal dismissed at his request.

2

hillside above the wall to decrease the weight bearing on it.  The contractor acknowledged the wall area was "a dangerous place."

Defendant, who described himself as the project manager for the construction, was on site every week observing the work.  Because Liu was often out of the country, it was defendant who oversaw construction and dealt with the property owner and workers.  The owner communicated by e-mail with Liu, but only met him in person on a few occasions and never saw him at the construction site.

By December 2011, the foundation work was not complete. The contractor had not been paid by Liu's company for two weeks and ultimately walked off the job on January 6, 2012.  At that time, the hallway excavation still had the 12-foot high, unsupported dirt wall with an overhanging ledge, and there were numerous unresolved issues with the construction.

Defendant had to find new workers to complete the job, which was by then behind schedule.  The one licensed contractor he asked to take over declined the job because he had not been timely paid the last time he worked with Liu's company.  The person defendant found to finish the work was not a licensed contractor, but rather a union carpenter who would sometimes independently take on side construction projects.  Defendant agreed to pay him $35 per hour to complete the foundation work, and the carpenter understood that he was being hired as an employee of Liu's company.

The carpenter began work on January 16, 2012, and considered himself a worker under the supervision of defendant, and not responsible for the safety of the jobsite.[2]  Defendant did not put in place any job safety plan nor did he meet with the workers to discuss safety.  In addition to the carpenter, several other workers were hired on an

---

[2] The carpenter's credibility on this point was vigorously disputed at trial.  We view the facts in the light most favorable to the jury's verdict, as we must.  (*People v. Massie* (2006) 142 Cal.App.4th 365, 371.)

hourly basis to help complete the job. One of those workers was 39-year old Raul Zapata.

On January 25, 2012, an inspector from the City of Milpitas came to the jobsite and handed defendant a "Stop Work Notice." The notice states, "As authorized by Milpitas Municipal Code Section II-1-11.04, you are hereby directed to stop all construction work for the following reasons: [¶] Excavation without required shoring and/or excavation. Consult with soils engineer on recommendation." At the bottom of the single-page notice, in a shaded box, the following text prominently appears: "DO NOT PROCEED [¶] with this job until the above has been approved for correction by the building and safety department." [Capitalization omitted.]

Defendant did not tell any of the workers about the notice and he did not direct anyone to stop work. Instead, he told the workers that the city wanted benching cut into the hill above the wall. He took the notice to the engineer who had prepared the initial soils report for the project and told him the city was requiring a shoring system for the excavation. They discussed fashioning a rudimentary shoring system out of plywood, but the engineer did not visit the site or provide recommendations specific to the hallway excavation area. Defendant never sought approval from the city to continue the construction.

Two days after the Stop Work Notice was given to defendant, he specifically instructed the workers to work in the excavation area. He told them to start putting boards alongside the dirt walls forming the hallway because the owner was going to be visiting the site soon and would want some visible progress. The next day, Raul Zapata was working at the end of the hallway excavation, nailing together wood forms. At around 10:45 a.m., the excavation wall collapsed directly on top of him, crushing his skull and killing him.

Two and a half years later, a grand jury was convened and returned an indictment charging defendant with involuntary manslaughter (Pen. Code, § 192, subd. (b)), and

4

three counts of willfully violating safety orders (Lab. Code § 6425, subd. (a)).[3] After a jury convicted defendant of all charges, the court sentenced him to the mitigated term of two years (to be served in county jail, under Penal Code section 1170, subdivision (h)).

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

#### 1. Standard of Review

"The standard of review of the sufficiency of the evidence to support a conviction is well known. [Citation.] In reviewing the entire record, the sole function of the appellate court is to review the evidence in the light most favorable to the judgment, presume in support of the judgment every fact that can be reasonably deduced from the evidence, and 'determine … whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt.' " (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1139.) "Reversal is not warranted unless it appears ' "that upon no hypothesis whatever is there sufficient substantial evidence to [support the conviction]." ' " (*Ibid.*)

#### 2. Involuntary Manslaughter

Defendant contends there was insufficient evidence to support his conviction for involuntary manslaughter because the prosecution did not present expert witness testimony to establish he owed a duty to the victim or that he breached a duty. In order to prove involuntary manslaughter under Penal Code section 192, subdivision (b), the prosecution must show the defendant unintentionally killed the victim in either of two ways: (1) in the commission of an unlawful act that is not a felony; or, (2) in the commission of a lawful act which might produce death, in an unlawful manner, or

---

[3] The underlying orders were: Code of Regulations, title 8, section 1540, subdivision (j)(1) (requiring protections for employees from loose rock or soil), subdivision (k)(1) (requiring daily inspections of excavation sites); and section 1541.1, subdivision (a) (requiring protective systems for employees in excavations).

without due caution and circumspection.  Here, the prosecution proceeded on the second theory—commission of lawful act in an unlawful manner, without due caution and circumspection.  This requires a showing of criminal negligence.  (*People v. Butler* (2010) 187 Cal.App.4th 998, 1007.)

Criminal negligence is defined as conduct that is " 'such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard of human life or an indifference to the consequences.' " (*People v. Penny* (1955) 44 Cal.2d 861, 879.)  Criminal negligence is also described in terms of objective foreseeability, that is, one acts with criminal negligence when a person "of ordinary prudence would foresee that the act would cause a high degree of risk of death or great bodily harm." (*People v. Rodriguez* (1960) 186 Cal.App.2d 433, 440.)  It is not necessary that a defendant subjectively appreciate the risk and consciously disregard it— that would be the more serious offense of second degree murder.  (*People v. Butler*, *supra*, 187 Cal.App.4th at p. 1008.)  A defendant can be convicted of involuntary manslaughter despite a good faith belief that the conduct posed no risk, if that belief was objectively unreasonable under the circumstances.  (*Id*. at pp. 1008–1009.)

These legal standards for proving involuntary manslaughter reveal the flaw in defendant's argument that he could not be convicted without expert testimony.  Defendant asserts expert testimony was required to establish the duty, or standard of care, with which he was required to act, and whether his conduct amounted to a breach of that duty.  But expert testimony is only appropriate where the subject of the testimony is "beyond the common experience." (Evid. Code, § 801, subd. (a).)  Whether a person of ordinary prudence would foresee a risk of death or bodily harm in certain conduct is not beyond common experience—it is necessarily within it.  Expert testimony is not required where the question is what a reasonable person would do.

6

Defendant cites no authority suggesting that expert testimony is required in a criminal negligence case and his citations to tort cases are unavailing. Defendant posits that "[t]he prosecution was required to present evidence sufficient to prove each element of the *tort* of negligence" (italics added), but that is an incorrect statement of law. The two cases defendant cites, *Garabedian v. Superior Court of San Francisco* (1963) 59 Cal.2d 124 and *Barner v. Superior Court* (1991) 1 Cal.App.4th 793, do not involve criminal negligence; they simply stand for the unremarkable proposition that the prosecution is required to prove each element of a charged offense. Defendant also relies on *Miller v. Los Angeles County Flood Control District* (1973) 8 Cal.3d 689, 702 (*Miller*), for the proposition that the prosecution was required to present evidence as to the standard of care owed by defendant "in his capacity as an unlicensed person and assistant to a general contractor." But as a civil case, *Miller* is inapposite. The issue here is whether defendant acted without the same regard for human life that an ordinary person—without regard to occupation—would have observed. (*People v. Mehserle*, *supra*, 206 Cal.App.4th at p. 1146 ["(California criminal negligence law) makes no exceptions for any particular occupation. Such an exception would, we presume, be a matter for the Legislature and not for the courts."].)

Further, defendant's analogy to civil professional negligence cases is not viable here because this situation is not equivalent to one where, due to a defendant's occupation (such as a doctor, a lawyer, or a building contractor), a plaintiff seeks to hold the defendant to a different standard of care than would apply to an ordinary person, and therefore needs an expert in the particular field to establish the applicable standard of care. Under the theory of criminal negligence advanced in this case, the defendant was not being held to any heightened standard of care, only an ordinary standard: to avoid acting in a manner that creates an objectively foreseeable risk of death or bodily harm. As such, no expert testimony was needed.

7

Defendant also argues expert testimony was required to establish that he violated the Stop Work Notice issued by the city of Milpitas. Defendant complains that the prosecution "insinuate[ed]" the Stop Work Notice was violated, without any expert testimony to establish that it was in fact violated. But the theory of involuntary manslaughter advanced by the prosecution does not depend on proof that defendant violated the technical requirements of a Stop Work Notice. The prosecution only needed to establish that defendant acted without appropriate regard for human life. As such, the failure to establish a violation of the Stop Work Notice, standing alone, is not a basis for finding insufficient evidence to support the conviction.

The prosecution presented evidence that defendant was in a supervisory position at the construction site, took no action to enhance the safety of the workplace, violated several applicable safety regulations, did not inform the workers that he had been ordered by the city to stop work due to a dangerous condition, and directed the victim to work in the dangerous area even after receiving the Stop Work Notice. The evidence was sufficient for a rational jury to conclude that defendant committed involuntary manslaughter by performing a lawful act that might produce death, without due caution or circumspection.

### 3. Willful Violation of a Safety Order

Defendant contends the evidence was insufficient to support his conviction on three counts of violating Labor Code section 6425, subdivision (a) (willful violation of a health or safety order causing death) because no expert testimony was presented regarding the issue of causation. Defendant asserts, in effect, there was no evidence from which the jury could infer that his violation of the underlying safety regulations (Cal. Code Regs., tit. 8, § 1541, subds. (j)(1), (k)(1), and § 1541.1, subd. (a)) proximately caused the victim's death.

8

We find ample evidence presented from which to infer noncompliance with the regulations caused the death in this case. The applicable regulations require an adequate protective system for employees working in excavation sites, and that the excavation be inspected daily. They also require some sort of barricade to protect employees from loose rock or soil. An expert in excavation safety testified that excavation work presents a high risk of cave-in and that the entire purpose of the regulations is to protect employees from cave-ins. Photographs were admitted into evidence showing unsupported dirt walls that the expert testified did not have the cave-in protections required by the regulations. The jury heard testimony that the victim was crushed when soil collapsed on him and saw graphic photographs showing his body buried in dirt. Defendant speculates based on the expert's testimony that the victim was killed when an overhanging dirt ledge fell on him, rather than the face of the dirt wall, so that compliance with the regulations would not have prevented the death. But the record does not support that theory—indeed, the evidence points to the opposite conclusion. We find sufficient evidence to support the causation element of the three regulatory violation counts.

## B. NO INSTRUCTIONAL ERROR

Defendant argues the trial court committed a number of errors in instructing the jury. We review claims of instructional error independently to determine whether the trial court " 'fully and fairly instructed on the applicable law.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1089.) As explained below, we find no error in the jury instructions.

### 1. No Instruction Required on Distinct Acts Forming the Basis of "Construction of a Residence"

The trial court instructed the jury on the prosecution's theory that defendant committed involuntary manslaughter by performing a lawful act with criminal negligence. The instruction regarding the elements of involuntary manslaughter specified

9

the lawful act that defendant performed as "construction of a residence" in Milpitas, California. Defendant argues this instruction was inadequate because the trial court should have further defined for the jury what distinct acts were included within "construction of a residence." But the instruction is a pattern jury instruction that correctly states the applicable law (CALCRIM No. 581), and defendant never proposed an alternative or additional instruction further defining "construction of a residence."[4] Since defendant did not propose a different or additional instruction defining the term, he forfeited any claim of instructional error. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1228–1229 [failure to request an instruction waives the issue on appeal].)

Given the obvious forfeiture of any challenge premised on the failure to give an instruction he never requested, defendant urges that the trial court had a sua sponte instructional duty. There was no sua sponte duty to define the term "construction of a residence," because it does not involve a general principle of law. (*People v. Saille* (1991) 54 Cal.3d 1103, 1120.) Defendant relies on *People v. Breverman* (1998) 19 Cal.4th 142, 154, but that case holds only that a court must instruct on "general principles of law relevant to the issues raised by the evidence." The trial court adequately instructed on all of the general principles of law applicable to involuntary manslaughter. Defendant also relies on *People v. Hudson* (2006) 38 Cal.4th 1002, 1012, for the proposition that the jury must be instructed on the technical, legal meaning of a word or phrase if that meaning differs from its ordinary usage. That case is distinguishable because it held a court must properly define the technical meaning of a term in a penal statute under which defendant is charged because failing to do so would result in an

---

[4] Defendant appears to have provided the trial court with a copy of a jury instruction given in an unrelated case where a physician was charged with involuntary manslaughter and the alleged criminally negligent act was described as administering a particular medication to the victim. Defendant never asked the trial court to give that instruction.

incorrect instruction of law. This principle does not apply when the term in question is not found in a statute.

## 2. No Instruction Required Regarding Defendant's Duty

Defendant contends the trial court erred in not giving an instruction regarding the extent of the duty he owed to others in connection with constructing a residence. As we have explained in connection with defendant's insufficient evidence contention, no heightened duty applied to defendant. He was obligated only to act in an objectively reasonable manner to avoid the risk of death or bodily harm, a concept that is adequately explained by the trial court's instruction on the elements of involuntary manslaughter. No further instruction was required.

## 3. The Trial Court Properly Refused Defendant's Special Instruction Regarding the Stop Work Notice

Defendant contends the trial court erred in not giving the following special instruction he proposed: "The prosecutor has made certain uncalled for insinuations that Dan Luo ignored a 'Stop Work Notice'. The prosecutor has absolutely no evidence to present to you to back up these insinuations. You must disregard these improper, unsupported remarks and insinuations that Dan Luo ignored a 'Stop Work Notice.' "

Beyond its argumentative tone, the instruction has no legal basis. Evidence was presented at trial that defendant ignored a Stop Work Notice: he did not tell any of the workers about it, did not tell them to stop working, and instead instructed them to work in the dangerous area. Defense counsel was free to argue otherwise, but there was no basis for instructing the jury to disregard the prosecution's argument on that point. The trial court properly refused the instruction.

## 4. No Error in Providing Jury with the Applicable Regulations

Defendant asserts that the trial court erred by giving to the jury along with the jury instructions a copy of the text of the safety regulations he was charged with willfully

11

violating. Defendant was charged in counts 2, 3, and 4 with a violation of Labor Code section 6425, subdivision (a) (unspecified statutory references are to this code). That section provides: "Any employer and any employee having direction, management, control, or custody of any employment, place of employment, or of any other employee, who willfully violates any occupational safety or health standard … and that violation caused death to any employee … is guilty of a public offense punishable by imprisonment in a county jail for a term not exceeding one year … ."

The basis for count 2 was defendant's violation of California Code of Regulations, title 8, section 1541.1, subdivision (a), which requires certain protective measures for employees working in excavations. Count 3 alleged a violation of California Code of Regulations, title 8, section 1541, subdivision (j)(1), which requires certain protective measures to prevent injuries to employees from loose rock or soil. And count 4 alleged a violation of California Code of Regulations, title 8, section 1541, subdivision (k)(1), which requires daily inspections of excavation sites. In connection with these charges, the trial court instructed the jury on the essential elements of a violation of section 6425, subdivision (a): that defendant was an employer or employee; had direction, management, or control; willfully violated an occupational safety order; and the violation caused death. The instruction indicated that "[t]he language of each safety order is set forth in a separate instruction."

The court also gave an instruction entitled "Safety Orders," which provided a summary version of the underlying safety regulation defendant allegedly violated in connection with each count. Finally, the court provided to the jury as an attachment to final jury instructions, a 47-page document containing the full text of the applicable safety regulations. Defendant argues the court erred in providing the jury with the applicable regulations because they were provided "without guidance as to how the instruction was to be applied to Count 1 [involuntary manslaughter], if at all," and could have been used by the jury to presume a violation of the regulations meant defendant was

12

"strictly liable" for involuntary manslaughter. We reject this argument because the instructions for the involuntary manslaughter charge in count 1 do not refer to the safety regulations, do not allow for strict liability, and properly instruct the jury on the elements of involuntary manslaughter. We must presume the jury followed the instructions. (*People v. Nguyen* (1995) 40 Cal.App.4th 28, 37.) The record does not suggest otherwise.

The verbatim text of the underlying safety regulations is by definition a correct statement of the law. And while the regulations are long and fairly complex, nothing in the record indicates the jury was misled by them, particularly given the clear instruction as to the elements of a violation of section 6425, subdivision (a) and the accompanying instruction summarizing each applicable underlying regulation. Providing the jury with the full text of the regulations along with those instructions was not error.

## 5. Trial Court Properly Instructed on the Elements of the Labor Code Section 6425, Subdivision (a) Offense

Defendant contends the trial court did not properly instruct the jury on the elements of section 6425, subdivision (a) (willful violation of an occupational safety regulation). The thrust of defendant's argument is that the underlying safety regulations (Cal. Code of Regs., tit. 8, § 1541, subds. (j)(1), (k)(1), and § 1541.1, subd. (a),) do not state they apply to supervisors (as opposed to employers), and therefore the court should have instructed the jury that defendant could be found liable for violating section 6425, subdivision (a) only if it first found he was an employer.

Defendant ignores the controlling statutory language, which plainly applies to both employers *and* employees with supervisory roles. (§ 6425, subd. (a) ["Any employer and any employee having direction, management, control, or custody of any employment, place of employment, or of any other employee, who willfully violates any occupational

13

safety or health standard…"].)  The trial court's instruction to the jury on the elements of the offense appropriately tracked that language.

Defendant's cited authorities discussing whether criminal liability can be imposed on supervisors under regulations that are silent or ambiguous regarding to whom they apply have no application here, since section 6425, subdivision (a) expressly encompasses supervisors.  Defendant's assertion that section 6425, subdivision (a) is merely a penalty provision that does not create a substantive offense is incorrect.  The statute does create a criminal offense.  (*People v. Superior Court (Solus Industrial Innovations, LLC)* (2014) 224 Cal.App.4th 33, 40.)  The trial court properly instructed the jury on the elements of that offense.

Defendant also argues that the instructions "judicially imposed a duty" on defendant not found in the regulations, again based on the theory that if the underlying regulations do not state they apply to supervisory employees, defendant could only be convicted of violating section 6425, subdivision (a) if he was an employer.  Again, this argument disregards the intent of the Legislature as expressed in the plain language of the statute that it is a crime for an employee with the described supervisory control to willfully violate the underlying safety regulations.  Defendant's reliance on *M. Kraus & Bros., Inc. v. United States* (1946) 327 U.S. 614 is misplaced.  In that case, the Supreme Court held that regulations promulgated by an administrative agency were not sufficiently definite to sustain a criminal prosecution because the regulations did not sufficiently define what conduct was prohibited.  Here, defendant does not argue that the regulations are unclear as to what conduct is prohibited; rather, he argues it is unclear that he can be held criminally liable for engaging in that prohibited conduct in his capacity as a supervisory employee.  As we have discussed, section 6425, subdivision (a) creates criminal liability for both employers and supervisory employees who violate the regulations.  The trial court's instructions did not impose any obligations beyond what the Legislature dictated in enacting section 6425, subdivision (a).

## C. NO ABUSE OF DISCRETION IN SUSTAINING OBJECTIONS TO CROSS-EXAMINATION OF TWO WITNESSES

Defendant contends that the trial court erred when it sustained objections to certain questions he posed to two prosecution witnesses (the owner of the property and an expert in excavation safety).  We review claims of evidentiary error for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

During the cross-examination of the property owner, defense counsel attempted to elicit from him a statement made by defendant, and the prosecution objected:  "Q:  And is it correct that Dan [Luo], on January 24, told you that a man from the Milpitas Building Department came by - - [¶] [Prosecutor]:  Objection.  Hearsay."  The court sustained the objection, and counsel then made a similar attempt to elicit defendant's statement, again drawing an objection:  "Q:  On January 24…did you receive some information from any source that a city - - that an inspector came by the job site?  [¶] [Prosecutor]:  Objection. It calls for hearsay.  This is an end run."  Defense counsel explained she was attempting to establish whether the witness remembered defendant informing him he had received a Stop Work Notice.  She argued that defendant's statement regarding receiving a Stop Work Notice was admissible because it was being offered to show the witness's state of mind.  The trial court again sustained the hearsay objection.

Invoking the "state of mind" exception to the hearsay rule (Evid. Code, § 1250), counsel indicated the statement was being offered to prove the state of mind of the testifying witness, that is, the person to whom the statement was made.  But that exception applies only to statements offered to show the state of mind of the *declarant*, not the listener. (Evid. Code, § 1250, subd. (a)(1) ["…evidence of a statement of the declarant's then existing state of mind…is not made inadmissible by the hearsay rule when:  [¶]  (1) The evidence is offered to prove the declarant's state of mind …"].) Whether defendant told the owner about the Stop Work Notice would be admissible for the non-hearsay purpose of showing that defendant took the action of informing someone

15

about the notice, and was therefore arguably less negligent.[5]  Defendant did not articulate this basis for admissibility at the time of the objections, so the argument is forfeited. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282  [failure to make an adequate offer of proof in the trial court precludes review of allegedly erroneous exclusion of evidence].)  Regardless, we see no cognizable prejudice resulting from the exclusion of this evidence.  Even if defendant mentioned the notice to the owner, it was undisputed he never told any of the workers about it and never sought permission from the city to continue construction.

During the cross-examination of an excavation safety and construction standards expert, defense counsel asked the witness whether he had an opinion regarding who constructed the residence at issue in the case.  The trial court sustained a prosecution objection on the grounds that the witness lacked personal knowledge and the question called for an improper opinion.  Given that the expert only inspected the project site after the excavation collapsed and never observed the site during construction, we find no abuse of discretion in ruling that the question called for testimony beyond the witness's personal knowledge and fields of expertise.

### D. DEFENDANT HAD ADEQUATE NOTICE OF THE CHARGES AND THE DOCTRINE OF ELECTION DOES NOT APPLY

Presenting the contention to us as a claim of instructional error, defendant advances arguments relating to notice of the charges and the doctrine of election.[6]

---

[5] The underlying *truth* of the statement—that defendant received the notice—is actually a fact favorable to the prosecution, the objecting party.  What was potentially harmful to the prosecution was the fact that defendant engaged in the act of telling someone about it.

[6] We will address those arguments despite the noncompliance with the rule of court requiring each point to be stated under a separate heading or subheading.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["…appellant's brief 'must' [Citations.] '[s]tate each point under a separate heading or subheading summarizing the point.  This is not a mere technical requirement; it is

(*Continued*)

16

Defendant asserts that "as a matter of fundamental fairness the accused is entitled to notice as to which of his acts the prosecution claims were criminal," and that the prosecution's failure to specify what it alleged to be defendant's criminally negligent conduct beyond construction of a residence did not provide him with adequate notice of the charges. "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess* (1955) 45 Cal.2d 171, 175.) "Under modern pleading procedures, notice of the particular circumstances of an alleged crime is provided by the evidence presented to the committing magistrate at the preliminary examination, not by a factually detailed information." (*People v. Jennings* (1991) 53 Cal.3d 334, 358; see also *People v. Thomas* (1987) 43 Cal.3d 818, 829, fn. 5 ["So long as the information adequately alleges murder, the evidence adduced at the preliminary hearing will adequately inform the defendant of the prosecution's theory regarding the manner and degree of killing."].)

This case proceeded by way of grand jury indictment rather than preliminary examination, but the principle remains the same. Though defendant was not present during the grand jury proceedings, he makes no claim that he was not provided with a complete transcript of those proceedings before trial (and indeed, he quotes from the grand jury transcript at length in his opening brief). We find no indication in the record that defendant was inadequately apprised of the nature of the charges against him or subjected to unfair surprise at trial.

Defendant also frames his complaint about the prosecution not specifying the facts supporting the criminal negligence allegation as a failure to elect which of defendant's

'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' "].)

17

acts constitute the charged crime. But the doctrine of election requires that when the evidence suggests more than one discrete *crime*, either the prosecution must elect which criminal act it seeks a conviction on, or the court must instruct the jury that it is required to unanimously agree which crime defendant has committed. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) That doctrine has no application where, as here, the evidence shows only a single discrete crime (one count of involuntary manslaughter) but there is disagreement as to exactly how the crime was committed. (*Ibid.* ["… the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty."].)

Even if the prosecution were required to elect the particular facts that support its theory of how the crime was committed, there would be no error because the trial court instructed the jurors they had to unanimously agree on the acts giving rise to defendant's criminal liability: "In order to prove the defendant is guilty of Involuntary Manslaughter in Count 1, the People have presented evidence of more than one act. You may not find the defendant guilty unless all of you agree that the People have proved the defendant committed at least one of these alleged acts and you all agree which act he committed." Since the evidence showed only one discrete crime, the unanimity instruction was not required, but defendant only benefited from it being given.

Defendant argues the failure to elect particular acts within the generally described conduct of "construction of a residence" resulted in a lack of notice and inability to intelligently defend against the charges. But as we have already explained, defendant was adequately apprised of the nature of the charges and the theory of the prosecution's case through the grand jury proceedings and pretrial discovery. We therefore reject defendant's claim of error based on the doctrine of election.

18

## E. LABOR CODE SECTION 6425, SUBDIVISION (A) IS NOT UNCONSTITUTIONALLY VAGUE

Defendant contends that the statute prohibiting the willful violation of an occupational safety order (§ 6425, subd. (a)) violates the due process clause of the United States Constitution because it does not provide adequate notice of what conduct is prohibited and allows for arbitrary and discriminatory enforcement. We review de novo the question of whether a statute is unconstitutional. (*Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 486.)

A penal statute will be upheld against a facial vagueness challenge so long as it warns of what conduct is prohibited with a reasonable degree of certainty, as measured by common understanding and experience. (*People v. Ellison* (1998) 68 Cal.App.4th 203, 208.) Defendant asserts the statute is vague because it does not provide sufficient warning that supervisory employees, in addition to employers, may be prosecuted for willful violations of safety regulations. Defendant does not maintain that the language of the statute itself is vague; rather, his argument is that a person reading only the text of the underlying regulations would not have notice that the statute subjects supervisory employees to criminal liability for violating them.

Defendant's narrow focus on the regulations ignores the plain language of section 6425, subdivision (a), which provides clear notice that both employers and supervisory employees are criminally liable for violating a safety regulation. Defendant argues that "[t]here is no way that any employee of an employer, even if given certain supervisory responsibilities, could know that he or she is legally responsible under pain of possible criminal prosecution" for complying with applicable safety regulations. But, of course, there is a way to know that it is a crime for a supervisory employee to willfully violate safety regulations, and that is by reading Labor Code section 6425, subdivision (a): "… any employee having direction, management, control, or custody of any employment, place of employment, or of any other employee, who willfully violates any

19

occupational safety or health standard…is guilty of a public offense punishable by imprisonment in a county jail … ."  Since, as we have previously explained, section 6425, subdivision (a) is the statute that creates the substantive criminal offense (*People v. Superior Court (Solus Industrial Innovations, LLC*, *supra*, 224 Cal.App.4th at 40), it makes little sense to completely discard it and focus exclusively on the regulations.

Defendant's argument that the statute allows for arbitrary and discriminatory enforcement is similarly flawed.  He argues there is nothing to prevent criminal enforcement against any individual working on a construction site, but section 6425, subdivision (a) limits criminal enforcement to employers and those employees who exercise direction, management, and control.  Defendant's assertion that the regulations must be read in isolation is neither persuasive nor supported by authority.

## III.    DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**


_____

Premo, (Acting) P. J.


_____

Mihara, J.


**H042668 – People v Luo**

# CERTIFICATION FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAN LUO,<br><br>    Defendant and Appellant. | H042668<br>(Santa Clara County<br>Super. Ct. No. 214054)<br><br>**ORDER GRANTING REQUEST**<br>**FOR PUBLICATION** |

BY THE COURT:

    Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted. It is ordered that the opinion in this matter, filed on October 4, 2017, shall be certified for publication.

Date:                            _____

                                         Grover, J.

                                   _____

                                         Premo, Acting P. J.

                                   _____

                                         Mihara, J.

| Trial Court: | Santa Clara County Superior Court, Case No.: 214054 |
|---|---|
| Trial Judge: | Hon. William J. Monahan |
| Attorneys for Plaintiff/Respondent: The People | Xavier Becerra<br>  Attorney General of California<br>Christopher W. Grove<br>  Deputy Attorney General<br>Amit Arun Kurlekar<br>  Deputy Attorney General<br>Roni Pomerantz<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant: Dan Luo | Marlene Thomason<br>  Attorney at Law |

**H042668 – People v Luo**