Filed 1/31/22  P. v. Bailey CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>   v.<br><br>CLARENCE KEITH BAILEY,<br><br>       Defendant and Appellant. | C091267<br><br>(Super. Ct. No. STKCRFE20170012028) |

Defendant Clarence Keith Bailey appeals his second degree murder conviction, contending the trial court erred in denying his motion to instruct the jury on excusable homicide based on accident in the heat of passion.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant strangled his girlfriend, S. B., to death.  He admitted to officers he had strangled her previously, supposedly to subdue her in their frequent, violent altercations. He also admitted he choked her teenaged daughter once.  These prior acts, apparently, resulted in nothing more than a police report.  This time, he told officers, S. B. had been drinking, "she was talkin' shit," "grabb[ing] me," and "jumpin' on top of me" in their bed.  He acknowledged being "pretty pissed" and "pretty heated."  "I was trying to just grab her just so she could shut up.  And, like, you know, cover her mouth."  He was "up

1

on her," "leaning over her," "squeezing pretty hard," as she tried to get him off. When she stopped talking, he ceased. He then noticed she "was spittin' up some white stuff out on the side of her mouth." He wiped her mouth, turned over, and went to sleep. Defendant claimed he thought she was sleeping and did not realize she was dead until the next morning. He was remorseful and had not intended to kill her.

At trial, a forensic pathologist testified for the prosecution that the white substance around S. B's mouth was a symptom of asphyxiation, a process that can take several minutes as the lungs fill up with frothy edema fluid, which can overflow through the airways. Additionally, S. B. had marijuana in her system and her blood-alcohol level was 0.33 percent -- high enough, according to two prosecution witnesses, that she would not be able to defend herself effectively.

The court instructed the jury on first and second degree murder, as well as voluntary and involuntary manslaughter. The jury found defendant guilty of second degree murder, and the court sentenced him to 15 years to life.

DISCUSSION

Defendant argues the court erred in refusing his request to instruct the jury with CALCRIM No. 511, which defines excusable homicide based on accident in the heat of passion. He argues, "[g]iven this undisputed history of choking women in the midst of heated arguments -- with no lingering effects from doing so -- a reasonable juror could have believed that [defendant] did not expect or intend choking [S. B.] to kill her this time." We disagree.

We review de novo a trial court's refusal to instruct the jury. (*People v. Licas* (2007) 41 Cal.4th 362, 366.) "The trial court has no duty to instruct on a defense that is not supported by substantial evidence." (*People v. Bohana* (2000) 84 Cal.App.4th 360, 370.) Taking defendant's proffered evidence as true and resolving doubts as to its sufficiency in his favor, we must reverse if there is " ' "evidence from which a jury composed of reasonable [people] could have concluded" ' " that the specific facts

2

supporting the instruction existed." (*People v. Petznick* (2003) 114 Cal.App.4th 663, 677.)

As relevant here, homicide is excusable "[w]hen committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, when no undue advantage is taken, nor any dangerous weapon used, and when the killing is not done in a cruel or unusual manner." (Pen. Code, § 195, case 2.) The claim that a homicide was accidental " 'amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime.' " (*People v. Bohana*, *supra*, 84 Cal.App.4th at p. 370.)

This defense, the elements of which are set forth in CALCRIM No. 511, does not apply if the defendant acted with criminal intent, including criminal negligence. "A person acts with criminal negligence when: [¶] 1. He or she acts in a way that creates a high risk of death or great bodily injury; [¶] AND [¶] 2. A reasonable person would have known that acting in that way would create such a risk. [¶] In other words, a person acts with criminal negligence when the way he or she acts is so different from how an ordinarily careful person would act in the same situation that his or her act amounts to disregard for human life or indifference to the consequences of that act." (CALCRIM No. 511.) Criminal negligence is shown "despite a good faith belief that the conduct posed no risk, if that belief was objectively unreasonable under the circumstances." (*People v. Luo* (2017) 16 Cal.App.5th 663, 671.)

Here, to make S. B. "shut up," defendant covered her mouth and, leaning over her as she tried despite her heavily inebriated state to get him off her, strangled her until she stopped talking. When she spit up a white frothy substance, he wiped her mouth and went to sleep, not bothering to see if she needed medical attention. Even assuming he believed based on his "undisputed history of choking women" that compressing her windpipe to restrict the flow of oxygen posed no risk, and that this belief persisted as she spit up white fluid, it is still irrelevant to the question of whether he acted with criminal

3

negligence. Thus, taking defendant's proffered statements as true and resolving doubts as to its sufficiency in his favor, his position that "a reasonable juror could have believed that [defendant] did not expect or intend choking [S. B.] to kill her this time" is without merit.

The inherently dangerous aggravated assault of strangling S. B. amounted to disregard for human life; going to sleep after seeing her foam at the mouth amounted to indifference to its consequences. These deliberate, objectively unreasonable actions -- even if defendant did not anticipate or desire their tragic consequences -- negate any inference defendant acted like an ordinarily careful person. A jury composed of reasonable people simply could not have concluded otherwise; indeed, defendant's second degree murder verdict means the jury necessarily found he acted with specific intent to kill or conscious disregard for life (*People v. Butler* (2010) 187 Cal.App.4th 998, 1006), both of which are higher degrees of culpability than criminal negligence (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1141-1142). Because defendant acted with, at a minimum, criminal negligence, we conclude there was no substantial evidence to support instructing with CALCRIM No. 511.

Therefore, the court properly denied defendant's motion.

DISPOSITION

The judgment is affirmed.


/s/
Robie J.

We concur:


/s/
Raye, P. J.


/s/
Hull, J.

4