Filed 1/25/22  P. v. Cree CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C093059 |
| Plaintiff and Respondent, | (Super. Ct. No. CR20006770 ) |
| v. | |
| DAVID KENNETH CREE, | |
| Defendant and Appellant. | |

A jury convicted defendant David Kenneth Cree of second degree murder and attempted voluntary manslaughter.  This court affirmed the second degree murder conviction in 2005.  In January 2019, defendant filed a petition for resentencing under Penal Code section 1170.95.[1]  The trial court found that defendant was ineligible for relief and denied the petition.  Defendant appeals, arguing that the trial court erred in denying his section 1170.95 petition.

---

[1]  Undesignated statutory references are to the Penal Code.

1

For the reasons set forth below, we conclude the trial court did not err in denying defendant's petition and affirm.

BACKGROUND

A.    *Prior Conviction*

The relevant facts of this case are detailed in our opinion *People v. Lamkin* (Sept. 13, 2005, C045080) [nonpub. opn.] (*Lamkin*).  On the evening of October 8, 2000, Gregory Rowan and Jimmie Richardson, were asked a question by two men in a car and when they approached the car, the passenger shot the men with a sawed-off shotgun; Rowan survived but Richardson died.  (*Id*. at p. 3.)  The night of the shooting, Lamkin and defendant told a friend they had been target shooting and this friend had seen defendant sawing off the back end of a shotgun.  (*Ibid*.)  The friend also said the two appeared to psyche themselves up for something "they needed to do."  (*Ibid*.)  Police later found expended shotgun shells at Lamkin's residence matching the expended shells at the scene of the crime.  (*Id*. at p. 4.)

Defendant testified at trial he did not know Lamkin was going to shoot anyone and Lamkin's testimony supported this view.  (*Lamkin, supra*, C045080 at pp. 4, 24-27.)  Lamkin testified he was drunk in the car and was startled awake by what he thought was a person with a weapon, so he fired the shotgun.  (*Id*. at pp. 4, 26-27.)

The jury found defendant and Lamkin guilty of second degree murder and attempted voluntary manslaughter and found true Lamkin was the actual shooter.  (*Lamkin, supra*, C045080 at p. 2.)  For second degree murder, the jury was instructed on unpremeditated and conscious disregard (implied malice) second degree murder.  (*Id*. at p. 9.)  Defendant was sentenced to 15 years to life for second degree murder and a consecutive determinate term of five years six months for attempted voluntary manslaughter.  (*Id*. at p. 2.)

2

Defendant appealed and we reversed his conviction for attempted voluntary manslaughter but affirmed his second degree murder conviction. (*Lamkin, supra*, C045080 at p. 30.)

B.      *Section 1170.95 Petition*

On January 11, 2019, defendant filed a petition for resentencing under section 1170.95. In the petition, defendant checked boxes that he was convicted of second degree murder "pursuant to the felony murder rule or the natural and probable consequences doctrine" and he could not be convicted of murder "because of changes made to . . . §§ 188 and 189."

While preparing the response to defendant's petition, the prosecutor found a natural probable consequence instruction in the packet of instructions given to the jury that had not been read orally to the jury. The instruction appears to originally have been refused or withdrawn but then the boxes indicating they were given as requested by the People were checked. In relevant part, the instruction provided:

"One who aids and abets [another] in the commission of a crime [or crimes] is not only guilty of [that crime] [those crimes], but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime[s] originally aided and abetted.

In order to find the defendant guilty of the crime[s] of <u>murder</u>, [as charged in Count <u>one</u>,][2] you must be satisfied beyond a reasonable doubt that:

1.  The crime of <u>murder</u> [was] committed;

2.  That the defendant aided and abetted [that] crime;

3.  That a co-principal in that crime committed the crime of <u>murder</u>; and

---

[2]  Defendant was charged in count one with first degree murder. [based on the allegation the murder "was intentional and perpetrated by means of discharging a firearm from a motor vehicle." (§ 189, subd. (a).)]; [count 1 verdict form])

3

4. The crime[s] of <u>voluntary manslaughter</u> [was] [were] a natural and probable consequence of the commission of the crime[s] of _____."

Defendant's counsel filed a brief with the trial court relying in part on this instruction.

On September 16, 2020, the trial court denied defendant's petition. The trial court found whether defendant made a prima facie showing turned on the instruction and whether a "reasonable inference can be made that the jury could have followed it in convicting" defendant. The trial court found such inference could not reasonably be made given the instruction is "incomplete, nebulous, and appears to have been added to the jury instructions at the last minute" and defendant's argument that the jury could have relied on this instruction in convicting him for second degree murder was "pure conjecture." "Thus, even under a *prima facie* standard of review, [defendant] has not met his burden that he is eligible for resentencing under the newly enacted provisions of Penal Code section 1170.95."

## DISCUSSION

Defendant makes two related arguments. He first contends the court erred in reviewing the record of conviction at the prima facie stage, imploring us to disagree with the cases deciding otherwise. But even considering the record of conviction, defendant also contends he has made a prima facie showing for relief because the jury was provided with a natural and probable consequence instruction. We disagree.

### I

*Scope of Prima Facie Review*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).) Senate Bill

4

No. 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice and by amending section 189 to state that a person can only be liable for felony murder if (1) the "person was the actual killer"; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the "person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, §§ 2, 3.)

Senate Bill No. 1437 also added section 1170.95 to provide the resentencing petition process. After a defendant submits a petition and the court does an initial review for missing information, subdivision (c) of section 1170.95 provides, in part, "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (c).)

Our Supreme Court recently concluded that, in performing this preliminary screening function, courts are not limited to the allegations of the petition; rather, "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under subdivision (c)." (*People v. Lewis* (2021) 11 Cal.5th 952, 972. Thus, if the record of conviction establishes the petition lacks merit, the trial court may deny the petition without conducting further proceedings. (*Id*. at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)

We therefore reject defendant's first contention of error. The trial court here was permitted to review all readily ascertainable information in determining whether defendant is ineligible for relief, including the jury instructions from defendant's trial. (See, e.g., *People v. Gomez* (2020) 52 Cal.App.5th 1, 15, review granted Oct. 14, 2020, S264033 ["the jury necessarily found that [the defendant] either participated in the

5

alleged robbery and kidnapping with the intent to kill [the victim], or that she was a major participant in those crimes who acted with reckless indifference to [the victim's] life"].)

## III

### *Prima Facie Analysis*

When reviewing the record of conviction during the prima facie stage, a court "should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) This review "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Ibid.*; *People v. Lewis, supra*, 11 Cal.5th at p. 971 [citing *Drayton* with approval].) The trial court should issue an order to show cause "[i]f, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95(a)." (*Drayton,* at p. 980.; *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 ["true factfinding should be reserved and exercised only after an order to show cause is issued and the parties are permitted to supplement the record with new evidence, including, if requested, through an evidentiary hearing"].)

The natural and probable consequence instruction cannot establish defendant's potential eligibility.[3] The instruction does not state or even elude to second degree murder, the killing charge the jury found defendant guilty of. It is unclear which charge

---

[3] In our opinion in defendant's direct appeal, in analyzing defendant's attempted voluntary manslaughter conviction, we noted "the trial court did not instruct on the natural and probable consequences doctrine." (*Lamkin, supra*, C045080 at p. 9.) This appears to not be correct, but in any case, it was dicta.

the instruction applies to as it refers to finding defendant guilty of murder "as charged in Count one," which was first degree murder. But the instruction then lists the crime of "voluntary manslaughter" being a natural and probable consequence of another unlisted crime. So, first degree murder was listed as both the target and non-target offense, and voluntary manslaughter was also listed as the non-target offense. This might be interpreted as permitting finding defendant guilty of voluntary manslaughter or first degree murder under the natural and probable consequences doctrine, but in both cases it would require the jury to fill in unknown information and overcome inconsistencies. In any case, there is no language at all permitting the jury to have applied this incomplete instruction to second degree murder. The only reasonable conclusion is the jury found defendant guilty of second degree murder based on the second degree murder instructions given—either unpremeditated murder or conscious disregard murder.

It would take several speculative leaps to accept defendant's argument the jury could have relied on this instruction in finding him guilty of second degree murder. The jury would have needed to: (1) understand the appropriate application of the natural and probable consequences doctrine from the incomplete instruction, (2) apply it to second degree murder against the language of the instruction, and (3) ignore the proper instructions given for second degree murder that did not rely on a natural and probable consequence theory. (*Lamkin, supra*, C045080 at p. 9.) We agree with the trial court that this relies on "pure conjecture." Further, defendant would have us violate a core principle of review that "[w]e must presume the jury followed the instructions. [Citations.]" (*People v. Luo* (2017) 16 Cal.App.5th 663, 675.) Though this instruction was ambiguous, it unquestionably could not have permitted the jury to find defendant guilty of second degree murder under the natural and probable consequences doctrine.

Finding otherwise would also be a fruitless exercise. If this instruction could satisfy defendant's prima facie burden, the trial court would be obligated to issue an order to show cause and hold an evidentiary hearing. But the only evidence defendant could

7

theoretically present to support his claim would be evidence showing the jurors collectively agreed to disobey the jury instructions and essentially develop their own theory of second degree murder separate from the theories required by the jury instructions. The unlikely existence and admissibility of such evidence further underscores defendant's ineligibility at the prima facie stage. (See, e.g., Evid. Code, § 1150, subd. (a) ["No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined"]; *In re Stankewitz* (1985) 40 Cal.3d 391, 403 fn. 5 [where one juror repeatedly stated his incorrect understanding of law based on his own outside experience, the court observed "the kind of juror misconduct involved in this case seems to occur only on rare occasions"].)[4] Again, "[j]urors are presumed to understand and follow the court's instructions. [Citation.]" (*People v. Holt* (1997) 15 Cal.4th 619, 662.)

---

[4] And though defendant is not required to present such evidence at the prima facie stage, it is telling he has not included or referenced the existence of any evidence indicating jury misconduct to the trial court or on this appeal.

## DISPOSITION

The judgment (order) denying the petition is affirmed.

_____\s_____,
BLEASE, Acting P. J.

We concur:

_____\s_____,
ROBIE, J.

_____\s_____,
RENNER, J.